IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00105-PAB

CANDELARIO RETANA III,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on plaintiff Candelario Retana's complaint [Docket No. 1], filed on January 14, 2011.  Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g), and the matter is ripe for disposition.

## I.  BACKGROUND[1]

Plaintiff applied for disability benefits on September 5, 2008, R. at 85, alleging a disability onset date of September 30, 2007.  *Id*.  After an initial denial, an

---

[1]Neither party requests oral argument, Docket No. 10 at 2, ¶ 9, and the Court concludes that the appeal can be resolved based on the parties' filings.

Administrative Law Judge ("ALJ") held a hearing on September 24, 2009. R. at 27. The ALJ denied plaintiff's claim for disability in a decision dated February 1, 2010.

In his decision, the ALJ found that plaintiff had the "following severe impairments: degenerative disc disease of the lumbar spine; depression; possible cognitive disorder; and history of alcohol abuse; and beginning on December 28, 2008, [plaintiff] also had a status post severe injury to the right hand as a severe impairment," R. at 12, but that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations. *See* R. at 13. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work, as defined in 20 CFR 416.967(b), except [plaintiff] is limited to rare fine manipulation with the right, dominant hand, limited lifting and gripping with the right dominant hand, only occasional postural activities, and is limited to simple, unskilled tasks, with General Educational Development (GED) levels of 2 in Reasoning, 1 in Mathematics, and 1 in Language.

R. at 14.

Based on these findings and the testimony of the vocational expert ("VE"), the ALJ found that, although plaintiff could not perform his past relevant work, he could perform jobs existing in significant numbers in the national economy. R. at 21. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. R. at 22. Plaintiff appealed the ALJ decision to the Appeals Council of the Social Security Administration, which declined review, making the ALJ's decision the final decision of the Commissioner. *See* R. at 1.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

> Furthermore,
> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

In his appeal, plaintiff presents four objections to the ALJ's decision: (1) the ALJ failed to find plaintiff's anti-social personality disorder a severe impairment at step two; (2) the ALJ failed to assign weight to Dr. Brett Valette's opinion; (3) the ALJ's RFC was not supported by substantial evidence; and (4) the ALJ erred by relying on the vocational expert's testimony which conflicted with the Dictionary of Occupational Titles ("DOT").

#### *1.  The ALJ's Step Two Analysis*

Plaintiff argues that the ALJ failed to find plaintiff's anti-social personality disorder a severe impairment at step two. Docket No. 11 at 32. Plaintiff claims that, because Dr. Valette states that the "major issue [with plaintiff]. . . seems to be his antisocial personality," R. at 166, the ALJ should have discussed this diagnosis in his determination at step two. *Id*. at 31. Plaintiff contends that the ALJ's failure to find the antisocial disorder a severe impairment at step two is reversible error. *Id*. at 32.

At step two, a claimant must show that, regardless of his age, education, and RFC, there exists more than the mere presence of a condition or ailment, or

5

combination thereof, that meets the duration requirement of the regulations; however, he need only make a "de minimis" showing. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). The Tenth Circuit has described this standard by explaining that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity." *Hinkle*, 132 F.3d at 1352.

Under the regulations, a "severe impairment" is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). "Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b). According to the regulations, examples of "basic work activities" include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

However, a determination of whether an impairment is "severe" at step two is somewhat different than the determination that occurs at the RFC calculation. Step two is essentially a threshold check against non-meritorious claims of disability. *See*

*Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining that at step two "the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities."). When an ALJ finds that a claimant has one or more severe impairments, but does not list others, that error may have little independent impact on the ultimate disability determination.

In this case, even if the ALJ erred at step two when he failed to determine whether plaintiff's antisocial personality disorder was a severe impairment, this error has little independent impact on the ultimate disability determination. At step four, an ALJ is to consider all of a plaintiff's impairments and limitations, even those that are not severe. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521 and 404.1523, when we assess your residual functional capacity."). Therefore, the Court finds that a review of the ALJ's treatment of plaintiff's antisocial personality disorder is better addressed upon review of step four and not step two.

### 2. Proper Weight Accorded to Dr. Valette's Opinion

Plaintiff claims that the ALJ merely recited statements found within Dr. Valette's opinion without providing a firm determination of the weight given to the opinion.

Docket No. 13 at 7. Plaintiff asserts that the ALJ's failure to explain the weight given to a non-treating source is reversible error. Docket No. 11 at 36.

When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions.[2] "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (noting that an ALJ must consider the opinion of a non-treating, examining physician and "provide specific, legitimate reasons for rejecting it"). Nevertheless, the ALJ does not have to explicitly discuss all of the factors for each of the medical opinions before determining what weight to provide. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Although the ALJ mentioned Dr. Valette's report during his RFC determination, the ALJ did not rely on this report. *See* R. at 17 (noting Dr. Valette provided only a "possible" diagnosis based on plaintiff's self reports). Additionally, Dr. Valette is not plaintiff's treating physician and only performed the examination at the request of the Social Security Administration. R. at 163-166. As such, the ALJ was not required to

---

[2]The factors, as outlined in 20 C.F.R. § 404.1527(d)(2)-(6) include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Siegle v Barnhart*, 377 F. Supp. 2d 932, 940 n.5 (D. Colo. 2005), citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

state the weight he gave to Dr. Valette's opinion or "give good reasons" for this weight; rather, "[the ALJ] need only have considered" Dr. Valette's opinion. *See McTaggart v. Astrue*, 342 F. App'x 373, 374 (10th Cir. 2009) (ALJ not required to explain the reasons for weight given non-treating physicians in the report; he need only have considered them); *accord Freeman v. Astrue,* 441 F. App'x 571, 574 (10th Cir. 2011) (ALJ not required to discuss weight given to opinion of doctors that did not qualify as treating physicians). The ALJ clearly considered Dr. Valette's opinion, *see* R. at 17; therefore, the ALJ did not err in failing to assign weight to Dr. Valette's evaluations. Moreover, the assessment of plaintiff's functioning in Dr. Valette's opinion does not conflict with the RFC formulated by the ALJ.

### 3. The RFC Determination

Concerning the ALJ's step four analysis, plaintiff makes the following arguments: (1) the ALJ failed to assess the plaintiff's mental limitations on a function by function basis; (2) the ALJ failed to include all of plaintiff's mental health limitations in the RFC; and (3) the RFC reasoning level was not supported by substantial evidence.

Plaintiff argues that the ALJ did not provide a function by function analysis in the RFC. Docket No. 11 at 39. Plaintiff claims that the ALJ failed to adequately assess his mental impairments in the RFC pursuant to 20 C.F.R. § 416.945(c).[3] *Id*.

---

[3] 20 C.F.R. 416.945(c) requires than an ALJ consider whether: "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work."

The Court finds that the ALJ's RFC adequately considered plaintiff's mental impairments on a function by function analysis. The ALJ gave great weight to Dr. Ellen Ryan's mental residual functional capacity assessment. R. at 20. Dr. Ryan found that plaintiff had "moderate limitations in his ability to understand and remember detailed instructions, in his ability to carry out very short and simple instructions, . . . and ability to respond appropriately to changes in the work setting." R. at 19. Despite these limitations, the ALJ found that plaintiff could still perform "a fair range of activities of daily living, his social functioning was okay," and, while he had poor recall, his concentration was fairly good. Dr. Ryan noted that plaintiff could do serial 3's, spelling tasks, and his thought process was clear, even if his history was vague and confused at times. R. at 19. Dr. Ryan also indicated that plaintiff could do work "requiring little judgment and involving simple tasks that could be learned in one month." R. at 19. Accordingly, the ALJ's RFC considered plaintiff's limitations in understanding, remembering, and carrying out instructions in accordance with 20 C.F.R. § 416.945(c).

Additionally, the ALJ also considered, but did not rely on, Dr. Valette's report. Based on Dr. Valette's report, the ALJ determined that plaintiff's daily activities and functioning were not severely limited as plaintiff lived independently, occasionally cared for his family, pets, children, nieces and nephews, had a girlfriend, visited with family and friends, read, did crosswords, and was studying for the GED. R. at 18. The ALJ concluded that plaintiff's ability to engage in such a wide variety of activities, to interact appropriately with friends and family, to often go out of his home, and to have no obvious concentration deficits indicated that plaintiff was capable of sustaining some level of work-related activities throughout a regular work schedule. *See* 20 C.F.R.

§ 416.945(c) (plaintiff's ability to respond "appropriately to supervision, coworkers, and work pressures").[4]  Thus, contrary to plaintiff's argument, the Court finds that the ALJ provided a function by function analysis of plaintiff's impairments.

The Court finds that the ALJ concluded that plaintiff's antisocial personality impairment was not severe.  During his discussion of Dr. Valette's report, the ALJ called Dr. Valette's findings a "possible diagnosis."  R. at 17.  The ALJ also found that plaintiff's alleged mental disorders were not supported by his reported activities.  R. at 18.  The ALJ stated that plaintiff's "daily activities and social interactions [] are not limited to the extent one would expect" and instead suggest that plaintiff is cognitively functioning fairly well.  R. at 18.  Additionally, the ALJ noted that plaintiff never sought any mental health treatment or counseling and that Dr. Valette found that plaintiff had a GAF score of 60-70, which indicated that plaintiff was "generally functioning pretty well, [and had] some meaningful interpersonal relationships."  Id.

Plaintiff argues that the ALJ's RFC failed to include mental health limitations the ALJ found at step three.  Docket No. 13 at 10.  Plaintiff argues that at step three the ALJ found that plaintiff had "mild restriction[s] in activities of daily living, only mild difficulties in maintaining social functioning, [and] moderate difficulties in maintaining concentration, persistence, and pace."  R. at 13.  Plaintiff argues that the ALJ did not address these limitations in his RFC at step four.  Docket No. 13 at 12.

---

[4]Moreover, the ALJ accorded plaintiff's mental impairment greater deference than Dr. Valette or Dr. Ryan when he concluded that plaintiff was limited to simple, unskilled work and General Educational Development (GED) levels of no more than 2 in reasoning, and 1 in each of mathematics and language.  See R. at 18.

At step four, the ALJ accepted Dr. Ryan's completed residual functional capacity assessment and gave it "great weight" because it was "well supported by and consistent with the record." R. at 20. In the "Summary Conclusions" section of the assessment, Dr. Ryan indicated that plaintiff had moderate limitations in the following areas: "the ability to carry out detailed instructions"; the ability to maintain attention and concentration for extended periods"; "the ability to understand and remember detailed instructions"; and "the ability to respond appropriately to changes in the work setting." R. at 183-84. In the "Functional Capacity Assessment," Dr. Ryan concluded that plaintiff could "do work requiring little judgment, simple tasks learned in 1 month." R. at 185. In adopting Dr. Ryan's opinion, the ALJ stated that Dr. Ryan opined "that despite a history of depression and possible cognitive disorder, [plaintiff] had [sic] overall was functioning fairly well." R. at 20. The ALJ added that he was "also adopting further restrictions to take into account the claimant's possible cognitive disorder, which Dr. Ryan did not address." *Id*.

Taking into account Dr. Ryan's opinion and the ALJ's additional limitations, the ALJ determined that plaintiff was "limited to simple, unskilled tasks, with General Educational Development (GED) levels of 2 in Reasoning, 1 in Mathematics, and 1 in Language." R. at 13. Given that the RFC is consistent with the moderate limitations provided by Dr. Ryan's summary conclusion, the Court finds no error in the ALJ's RFC. Although the ALJ did not specifically include every moderate impairment listed in Dr. Ryan's opinion, the ALJ's RFC adopted some of Dr. Ryan's moderate limitations such as restricting plaintiff to unskilled work not involving complex tasks, reflecting plaintiff's

moderate limitations in his ability to carry out detailed instructions and to maintain concentration for extended periods.

To the extent plaintiff argues the ALJ had to thoroughly discuss each of Dr. Ryan's conclusions, the Court finds that this is not the required legal standard. Where, as here, none of the record medical evidence conflicts with the ALJ's conclusion, there is no need for an express recital of the evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (when the ALJ discusses the medical evidence in detail and that evidence does not conflict with the ALJ's conclusion, the need for the ALJ to expressly analyze evidence is weakened); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Here, the ALJ reviewed both the evidence in the "Summary Conclusions" and the "Functional Capacity Assessment," and because the RFC does not conflict with either, the ALJ was not required to give a detailed recital of all the evidence.

Plaintiff also questions why the ALJ determined that plaintiff could perform work in a position requiring a level two reasoning and not a level one reasoning. Docket No. 13 at 18. On appeal, the Court is not to reweigh the evidence and determine whether it would have arrived at the same conclusion as the ALJ. Rather, the Court's role is to evaluate whether the ALJ's findings are supported by substantial evidence. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992) (court may not reweigh the evidence or substitute its judgment for that of the ALJ). Here, the Court finds that the ALJ's findings are supported by the evidence in the Administrative Record. The Court also finds that the ALJ's determination that plaintiff

may perform work requiring level two reasoning is supported by Tenth Circuit precedent. In *Hackett v. Barnhart*, 395 F. 3d 1168 (10th Cir. 2005), the Court stated that an RFC limitation for work requiring only "simple and routine work tasks" was not consistent with the demands of level three SVP, and the Tenth Circuit explained that level two reasoning "appear[ed] more consistent with Plaintiff's RFC." *Id.* at 1176. Therefore, the Court finds that the ALJ's RFC determination is supported by precedent and by evidence in the record.

### 4.  *Conflict between the VE Testimony and the DOT*

Plaintiff's final argument is that the ALJ failed to reconcile the VE's testimony with the DOT. Docket No. 11 at 55. Plaintiff argues that, because the position of street sweeper operator requires a reasoning level of 3 (SVP 3), the ALJ was required to question the VE about the conflict between the RFC and the VE's testimony that plaintiff could perform the street sweeper operator position. *Id*. Plaintiff argues that, without the street sweeper operator position, there are only 1,070 jobs available to plaintiff in the State of Colorado, which does not meet the statutory definition of a significant number.

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ relied upon the testimony of the VE and found that plaintiff could perform the position of a pamphlet distributor (DOT #230.687-010, light, SVP 2), with 170 jobs in Colorado and 20,000

nationally. R. at 21. The ALJ also found that plaintiff could perform the position of a parking lot attendant (DOT #915.473-010, light, SVP 2) with 500 jobs in Colorado and 40,000 jobs nationally, and the position of an usher (DOT #344.677-014, light, SVP 2) with 400 jobs in Colorado and 27,000 jobs nationally. However, the ALJ also included the position of street sweeper operator (DOT #919.683-022, light, SVP 3) with 55 positions in Colorado and 2,481 positions nationally.

In *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992), the Tenth Circuit indicated that the relevant test to determine the existence of a "significant number" of jobs is either the number of jobs in the regional economy or in the national economy. The vocational expert in *Trimiar* testified to the number of available jobs in the regional economy only, which ranged between 650 to 900 jobs. The court found that these did not meet the definition of a "significant number." *Id.*

The Court finds that plaintiff's reliance on *Trimiar* is misplaced. Courts must look at the number of jobs available nationally as well as regionally in order to determine whether these positions amount to a significant number. *See Raymond v. Astrue*, 356 F. App'x 173, 178 n.2 (10th Cir. 2009); *see also* 42 U.S.C. § 423(d)(2)(A) (providing that "'work which exists in the national economy' means work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country," and that it is irrelevant "whether such work exists in the immediate area in which [plaintiff] lives"); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("The Commissioner is not required to show that job opportunities exist within the local area."). The Tenth Circuit, in an unpublished opinion, has held that the ALJ may find

that jobs are available in a significant number based on the job estimate in the national economy if plaintiff only objects to the number of jobs in the local economy. *See Wendelin v. Astrue*, 366 F. App'x 899, 902-04 (10th Cir. 2010) (declining to remand based on claimant's challenge to number of jobs available in Colorado where plaintiff did not argue that number of jobs available nationally was not significant).

Given that the VE identified a total of 87,000 jobs available nationally when excluding the street sweeper operator position and given that plaintiff does not argue that the number of available jobs in the national economy is insignificant, the Court finds that the ALJ has identified a significant number of existing jobs that plaintiff is capable of performing. *See Botello v. Astrue*, 376 F. App'x 847, 850 (10th Cir. 2010) (declining to remand based on plaintiff's challenge to number of jobs when jobs in Colorado equaled 757, but there were 67,250 jobs in the national economy); *see also Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number"). Additionally, the Court finds that because the pamphlet distributor position, the parking lot attendant position, and the usher position are occupations consistent with the ALJ's RFC, the ALJ did not have to resolve a conflict with the VE testimony. Accordingly, the Court finds that the ALJ's error in including the street sweeper operator in step five is harmless. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (applying harmless error analysis in the context of failure to comply with SSR 00-4p); *see also King v. Astrue*, No. 10-cv-01530-LTB, 2011 WL 3471015, at * 7 (D. Colo. Aug. 08, 2011) (ALJ's failure to ask the VE whether the

VE's testimony was consistent with the DOT is harmless because of plaintiff's failure to identify conflict between VE and DOT at the hearing).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law.  As a result, the Commissioner's decision is **AFFIRMED**.

DATED March 30, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge